Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| JULIET VAHID PORCH<br><br>Peticionaria<br><br>v.<br><br>ASHWIN VINOD DESHMUKH<br><br>Recurrido | TA2026CE00700 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso núm.: MZ2023RF00612<br><br>Sobre: Divorcio – Ruptura Irreparable |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

### RESOLUCIÓN

En San Juan, Puerto Rico, a 10 de junio de 2026.

El 1 de junio de 2026, la señora Juliet Vahid Porch (la señora Vahid Porch o la peticionaria) *presentó ante nos un recurso de Certiorari* en el que solicitó que revoquemos la *Orden* emitida y notificada el 8 de abril de 2026 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario).[1]

En el aludido dictamen, el foro primario ordenó que la Unidad de Trabajo Social (UTS) identifique un recurso de coordinador de parentalidad dentro del término de veinte (20) días.

Después de examinar con detenimiento el recurso de epígrafe, optamos por prescindir de los términos, escritos o procedimientos ulteriores "con el propósito de lograr su más justo y eficiente despacho". Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 216 DPR __ (2025). Consecuentemente, procederemos a resolver el caso de autos sin la comparecencia del señor Ashwin Vinod Deshmukh (el señor Vinod Deshmukh o el recurrido).

---

[1] Entrada núm. 522 del caso núm. MZ2023RF00612 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari.*

**I.**

El caso de autos tiene su origen cuando, el 5 de octubre de 2023, la peticionaria instó una *Demanda* en la que solicitó la disolución de su matrimonio con el señor Ashwin Vinod Deshmukh (el señor Vinod Deshmukh o el recurrido) bajo la causal de ruptura irreparable.[2]

Tras diversos incidentes procesales, el 22 de diciembre de 2023, el TPI emitió una *Sentencia*, notificada el 26 de diciembre de 2023, en la que declaró Ha Lugar la *Demanda* de Divorcio interpuesta por la peticionaria.[3] El foro primario resolvió que, la custodia de los menores fruto de dicha relación, la retendría la señora Vahid Porch y la patria potestad sería compartida. Igualmente, determinó que, las relaciones paternofiliales y maternofiliales se mantendrían conforme a la Orden de Protección (OPA 2023-038367) en virtud de la *Ley para la Prevención e Intervención con la Violencia Doméstica*, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 601, *et. seq* (Ley Núm. 54-1989), la cual tenía una vigencia de un (1) año o hasta tanto el Tribunal dispusiera lo contrario.

Así las cosas, el 27 de octubre de 2023, la peticionaria radicó una *Moción informativa* en la que le informó al TPI que, la Orden de Protección emitida al palio de la Ley Núm. 54-1989, *supra*, fue convertida en una Orden de Protección al amparo de la *Ley sobre Controversias y Estados Provisionales de Derecho*, Ley Núm. 140 de 23 de julio de 1974, según enmendada, 32 LPRA sec. 2871, *et. seq.*, en aras de lograr mejores acuerdos para el beneficio de los menores. Por otra parte, la señora Vahid Porch adujo que, el recurrido

---

[2] Entrada núm. 1 del caso núm. MZ2023RF00612 en el SUMAC.
[3] Entrada núm. 88 del caso núm. MZ2023RF00612 en el SUMAC.

mantenía un patrón de maltrato mental contra los menores. A su vez, los menores estaban confrontando problemas en la escuela toda vez que, cuando estaban con el recurrido no completaban las asignaciones y se ausentaban en la escuela. Consecuentemente, solicitó que el *foro a quo* tomara conocimiento sobre ello.

Luego el 30 de enero de 2024, la trabajadora social la señora Gloria Almodóvar Ramos presentó una *Moción Informativa* en la que indicó que, tras entrevistar a los menores y sus familiares, recomendó un plan para que los menores se relacionen con el recurrido.[4] A su vez, sugirió que las partes explorasen herramientas tecnológicas para que se pudieran comunicar sobre asuntos de los menores.

El 21 de marzo de 2024, el foro primario emitió y notificó, una *Resolución* en la que ordenó a la Unidad Social que, debía cumplir con los acuerdos consignados por las partes ante el TPI.[5] Igualmente, determinó que, la Unidad Social debía calendarizar los asuntos o citas en días en que las partes no tengan que encontrarse innecesariamente para evitar que no se violenten los acuerdos. A su vez, sostuvo que, las partes debían continuar comunicándose mediante sus representantes legales.

El 11 de junio de 2024, la Trabajadora Social instó una *Moción informativa en cumplimiento de orden* en la que recomendó al señor Paul Fericelli como coordinador de parentalidad para que asistiera a la familia en su plan de crianza.[6]

Con ello, el 5 de agosto de 2024, el *foro a quo* emitió una *Orden a las partes* en la que ordenó a las partes a emplear los servicios provistos por el coordinador de parentalidad designado.[7]

---

[4] Entrada núm. 99 del caso núm. MZ2023RF00612 en el SUMAC.
[5] Entrada núm. 135 del caso núm. MZ2023RF00612 en el SUMAC.
[6] Entrada núm. 181 del caso núm. MZ2023RF00612 en el SUMAC.
[7] Entrada núm. 230 del caso núm. MZ2023RF00612 en el SUMAC.

Tras diversos incidentes relacionados a las terapias familiares, el 22 de noviembre de 2024, el foro primario celebró una vista de *status conference* en la que, las partes le informaron que acogieron la recomendación de la trabajadora social con respecto a acudir al Instituto de Terapia Familiar Rita Córdova y Asociados para la reunificación familiar.[8] Ello, puesto que podían recibir los servicios de forma virtual. Dicho centro fue sugerido por el recurrido.

Así, el 11 de diciembre de 2024, el TPI emitió una *Orden* notificada el 13 de diciembre de 2024, en la que ordenó al Instituto de Terapia Familiar Rita Córdova y Asociados ofrecer terapia de familia y reunificación familiar.[9]

El 11 de febrero de 2025, la señora Vahid Porch presentó una *Moción informativa y en solicitud de remedio* en la que el sostuvo que uno de los trabajadores sociales del Instituto Córdova, el cual resultó no ser un psicólogo, le informó que algunos servicios serían de forma presencial.[10] La peticionaria argumentó que, el trabajador social que los atiende, le notificó que los servicios se brindaran los viernes de forma alterna. No obstante, esta y el menor W.A.P.D, aún sujeto a recibir terapias, residen en el área oeste y no en el área metropolitana por lo que dificulta acudir a los servicios. Ante ello, solicitó al foro primario que ordenara que las terapias fueran de forma virtual.

El 20 de febrero de 2025, el TPI emitió una *Resolución y ordena a las partes* en la que, tras recibir un informe de la Unidad Social de Familia y Asuntos de Menores, determinó que las terapias debían recibirse de forma virtual. Sin embargo, cuando el menor W.A.P.D con el recurrido, el menor podía recibirla de forma presencial en compañía del recurrido.

---

[8] Entrada núm. 288 del caso núm. MZ2023RF00612 en el SUMAC.
[9] Entrada núm. 300 del caso núm. MZ2023RF00612 en el SUMAC.
[10] Entrada núm. 332 del caso núm. MZ2023RF00612 en el SUMAC.

Luego, el 22 de septiembre de 2025, la peticionaria radicó una *Urgente Moción solicitando remedio* en la que alegó que el trabajador social que atiende la familia estaba atacándola.[11] Agregó que, este ha obstaculizado el proceso de reunificación familiar y, por tanto, solicitó al TPI que los servicios fueran cancelados.

Con relación a lo anterior, tras diversos planteamientos esbozados por las partes, el 31 de marzo de 2026, la trabajadora social de la Unidad Social de Familia y Asuntos de Menores instó una *Moción en contestación de orden* en la que indicó que, ha identificado diversos planteamientos sobre las partes en cuanto a la patria potestad de los menores.[12] Asimismo, sostuvo que, pese a los intentos de métodos de terapia convencional, no han rendido frutos. Por tanto, la trabajadora social solicitó al TPI que identifique un coordinador de parentalidad como medida agresiva para resolver dicho aspecto.

En respuesta, el 8 de abril de 2026, el foro primario emitió una *Orden* en la que ordenó a la Unidad de Trabajo Social que identifique un recurso de coordinador de parentalidad en el término de veinte (20) días.[13]

Insatisfecha, la señora Vahid Porch radicó una *Moción en solicitud de reconsideración a orden* en la que ripostó que varios coordinadores de parentalidad han intervenido en el pleito y, no han brindado resultados positivos.[14] Además, la peticionaria solicitó que, el foro primario ordenara la implementación de una plataforma para que esta y el recurrido pudieran comunicarse para atender los asuntos del menor W.A.P.D. Así pues, expresó que, la solicitud de la trabajadora social acarrearía someter nuevamente a los menores a

---

[11] Entrada núm. 423 del caso núm. MZ2023RF00612 en el SUMAC.
[12] Entrada núm. 511 del caso núm. MZ2023RF00612 en el SUMAC.
[13] Entrada núm. 522 del caso núm. MZ2023RF00612 en el SUMAC.
[14] Entrada núm. 531 del caso núm. MZ2023RF00612 en el SUMAC.

un proceso que no a arrojado resultados. Por ende, solicitó que se dejara sin efecto la *Orden* emitida el 8 de abril de 2026.

Así las cosas, el 1 de mayo de 2026, el foro a quo emitió una *Resolución sobre la Moción de reconsideración de la parte demandante* en la que declaró No Ha Lugar a la referida moción de reconsideración.[15]

Inconforme, la peticionaria presentó ante nos un recurso de *Certiorari* en la que coligó los siguientes señalamientos de error:

> Primer error: Erró y abusó de su discreción el Tribunal de Primera Instancias al acoger la recomendación del a trabajadora social asignada al caso y ordenar nuevamente la designación de un coordinador parental, sin ponderar adecuadamente el extenso historial procesal del caso, la multiplicidad de profesionales que ya han intervenido, los procesos terapéuticos y coordinador parental previamente intentados, y el impacto económico y emocional que ello ha tenido sobre las partes y el menor.

> Segundo error: Erró el Tribunal de Primera Instancia al imponer nuevamente la figura de un coordinador parental como medidia principal, sin antes considerar alternativas menos onerosas, menos intrusivas y más proporcionales a la controversia planteada, incluyendo la utilización de la herramienta OurFamilyWizard como mecanismo estructurado, verificable y documentado para canalizar la comunicación parental y el cual previamente este mismo Tribunal había considerado con herramienta futura.

> Tercer error: Erró el Tribunal de Primera Instancia al ordenar una medida que, en la práctica, añade una nueva de intervención sobre el menor y la familia, sin considerar que el menor ya se encuentra inmerso en un proceso de revinculación familiar con otro profesional y que imponer recursos adicionales puede resultar acumulativo, invasivo y contrario a la estabilidad emocional que debe protegerse.

> Cuarto error: Erró el Tribunal de Primera Instancia al no realizar un balance adecuado entre el alegado interés del padre en que se atiendan sus reclamos de comunicación y patria potestad, y el derecho del menor a no ser sometido a intervenciones profesionales repetitivas, costosas o innecesariamente intensas, especialmente cuando existen alternativas menos restrictivas para atender la controversia.

El 9 de junio de 2026, la peticionaria radicó una *Moción Urgente en Auxilio de Jurisdicción solicitando paralización parcial de los efectos de la Resolución dictada el 5 de junio de 2026- Entrada 548* en la que solicitó que ordenáramos la paralización parcial de los

---

[15] Entrada núm. 534 del caso núm. MZ2023RF00612 en el SUMAC.

procedimientos ante el TPI puesto que el foro a quo impuso una coordinadora de parentalidad.

En igual fecha, emitimos una *Resolución* en la que ordenamos la paralización de los procedimientos ante el foro primario hasta tanto nos pronunciáramos acerca del recurso de *Certiorari* presentado por la peticionaria.

De conformidad con la Regla 7 (B) (5) de nuestro Reglamento, *supra*, procederemos a disponer del recurso de autos dado que dicha regla nos permite prescindir de los escritos, tal como lo es el recurso ante nos.

**II.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004-1005 (2021); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023). Véase, además, *IG Builders et al v. BBVAPR*, 185 DPR 307, 337 (2012); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc, supra; Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 596 (2011). Cónsono con lo anterior, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone en lo pertinente lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo

dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso. En aras de ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, Regla ___ del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, 216 DPR __ (2025), dispone los criterios a considerar para poder atender o no las controversias ante su consideración. *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). Véase, *Rivera et al. v. Arcos Dorados et al., supra*; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020); *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Los criterios que debemos considerar son los siguientes:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. *Torres Martínez v. Torres Ghigliotty*, *supra*, pág. 97. Ahora bien, este Tribunal de Apelaciones puede expedir el auto de certiorari cuando "se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos que revistan interés público o cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 195.

**III.**

En apretada síntesis, la peticionaria recurrió de una *Resolución* en la que el TPI ordenó que la UTS identificara un coordinador de parentalidad.[16] Inconforme, acudió ante nos mediante un recurso de *Certiorari* en la que argumentó que, el TPI abusó de su discreción al ordenar la designación de un coordinador parental sin ponderar otras medidas menos onerosas como el uso de una plataforma para esta y el recurrido comunicarse. La peticionaria afirma que dicho dictamen conllevaría someter al menor a una nueva intervención intensa, costosa y en detrimento del menor.

---

[16] *Véase* Entrada núm. 522 del caso núm. MZ2023RF00612 en el SUMAC.

Es menester resaltar que, la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, nos permite por excepción atender un dictamen interlocutorio emitido sobre asuntos de familia.

Tras un análisis de la totalidad del expediente y en correcta práctica apelativa resolvemos que no procede la expedición del auto de *certiorari* solicitado. Ello, en virtud de que no se configuraron los requisitos que establece la Regla 40 de nuestro Reglamento, *supra*, que nos facultan expedir el auto de *certiorari*. El dictamen recurrido no fue contrario a derecho ni constituye un fracaso a la justicia o cualquier circunstancia establecida en la citada regla.

Atisbamos que, la denegatoria de la expedición del auto de *certiorari* no constituye una adjudicación en los méritos sobre la controversia.

**IV.**

Por los fundamentos que anteceden, denegamos la expedición del auto de *certiorari* solicitado. A su vez, dejamos sin efecto nuestra *Resolución* emitida el 9 de junio de 2026, en la que ordenamos la paralización de los procedimientos ante el foro primario.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones